[Cite as *State v. Conner*, 2023-Ohio-1220.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 111889 |
| KENDLE CONNER, | : | |
| Defendant-Appellant. | : | |

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 13, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-21-661251-B and CR-21-661269-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Marco Tanudra, Assistant Prosecuting Attorney, *for appellee.*

Law Office of Timothy Farrell Sweeney and Timothy F. Sweeney, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Kendle Conner, appeals his convictions after he pled guilty to involuntary manslaughter, felonious assault and having weapons while under disability in Cuyahoga C.P. No. CR-21-661269-A ("661269") and having

weapons while under disability in Cuyahoga C.P. No. CR-21-661251-B ("661251"). He contends that (1) his guilty pleas to the involuntary manslaughter and felonious assault counts were not entered knowingly, intelligently and voluntarily and that the trial court erred in accepting his guilty pleas because the trial court did not advise him, prior to the entry of his guilty pleas, regarding the merger of allied offenses and (2) the involuntary manslaughter and felonious assault counts should have merged for sentencing. For the reasons that follow, we affirm.

**Procedural History and Factual Background**

{¶ 2} In 661251, a Cuyahoga County Grand Jury indicted Conner on four counts: two counts of having weapon while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony, with forfeiture-of-weapon specifications; one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; and one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony, with forfeiture-of-weapon specifications. These charges related to a July 1, 2021 incident.

{¶ 3} In 661269, a Cuyahoga County Grand Jury indicted Conner on six counts: one count of aggravated murder in violation of R.C. 2903.01(A), an unclassified felony (Count 1); one count of murder in violation of R.C. 2903.02(A), an unclassified felony (Count 2); one count of murder in violation of R.C. 2903.02(B), an unclassified felony (Count 3); one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony (Count 4); one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony (Count

5) and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony. The aggravated murder, murder and felonious assault counts included one-year and three-year firearm specifications. These charges related to the May 31, 2021 shooting death of Jawun Washington. Conner allegedly shot Washington in front of his mother and two young siblings at a gas station in retaliation for an incident several months earlier in which Washington had shot Conner. Washington was allegedly shot 13 times, including shots to his head, lungs, heart and chest. Conner initially pled not guilty to all charges.

{¶ 4} On July 11, 2022, the day scheduled for trial, the parties reached a plea agreement involving both cases. In 661269, Conner agreed to plead guilty to one count of involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony, with a three-year firearm specification (amended Count 1), one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony (amended Count 4) and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony (Count 6). In 661251, Conner agreed to plead guilty to one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony, with forfeiture-of-weapon specifications (Count 1). The parties further agreed that (1) that amended Counts 1 and 4 in 661269 would not merge for sentencing and (2) Conner would receive an aggregate sentence ranging from 20 to 25 years, at the court's discretion, for the offenses to which he would be pleading guilty in both cases. In exchange for Conner's guilty pleas, the remaining counts would be nolled.

**{¶ 5}** At the change-of-plea hearing, the state set forth the terms of the parties' plea agreement on the record. Defense counsel confirmed that the state had accurately set forth the terms of the plea agreement and stated that Conner was prepared to withdraw his former not guilty pleas and enter guilty pleas "as outlined by the State."

**{¶ 6}** After the terms of the plea agreement were stated on the record, the trial judge proceeded with the plea colloquy. In response to the trial judge's preliminary questions, Conner indicated that he was a United States citizen, was 21 years old, had attended school until the 10th grade and that he had no difficulty reading or writing.

**{¶ 7}** The trial judge confirmed with Conner that nothing had been "put in front of [him] in writing with respect to the charges in these cases" that he did not understand, that he was satisfied with the representation he had received from his attorneys and that his attorneys had "explained everything" to Conner and answered all his questions.

**{¶ 8}** The trial judge then advised Conner of his constitutional rights and confirmed that he understood the rights he would be waiving by entering his guilty pleas. The trial judge identified each of the offenses to which Conner would be pleading guilty and the potential penalties associated with each and confirmed that Conner understood them. The trial judge also confirmed that Conner understood that by pleading guilty to the offenses in these cases he had agreed to an aggregate sentence with "a 20 to 25-year range," which would be determined at the time of

sentencing. The trial judge explained postrelease control and the potential consequences of violating postrelease control. Conner indicated that he understood. Conner confirmed that no threats or promises had been made to him to induce him to change his pleas other than what had been stated on the record at the change-of-plea hearing.

{¶ 9} Conner entered his guilty pleas consistent with the plea agreement. The trial court found that Conner had entered his guilty pleas "knowingly, voluntarily, with a full understanding of his rights," accepted his guilty pleas and nolled the remaining counts. Defense counsel and the state both indicated that they were satisfied that the trial court had complied with Crim.R. 11.

{¶ 10} The following day, the trial court conducted a sentencing hearing. After hearing from the victim's mother, the state, defense counsel and Conner, the trial court sentenced Conner to an aggregate 25-year prison sentence. In 661269, the trial court sentenced Conner to 11 years on amended Count 1 (3 years months on the firearm specification to be served prior to and consecutive to eight years on the base offense), to eight years on amended Count 4 and to 36 months on Count 6. In 661251, the trial court sentenced Conner to 36 months on Count 1. The sentences on all counts were ordered to be served consecutively. The trial court also imposed postrelease control, ordered the forfeiture of the weapons identified in the forfeiture-of-weapons specifications and ordered Conner to pay costs.

{¶ 11} In support of its imposition of consecutive sentences, the trial court noted that there was an "agreed range" and further found that consecutive sentences

were warranted to "protect the public from future crime and to punish the Defendant," that they were "not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant possesses to the public" and that "[t]he Defendant committed one or more of the multiple offenses while he was under community control." On July 13, 2022, the trial court filed sentencing journal entries, setting forth its findings and the sentences imposed.

{¶ 12} Over the state's objection, the trial court declined to impose the "Reagan Tokes tail," when sentencing Conner, finding the indefinite sentencing provisions of the Reagan Tokes Law to be unconstitutional.[1] Conner raised no objection to his sentences at the sentencing hearing.

{¶ 13} Conner appealed, raising the following two assignments of error for review:

> Assignment of Error 1:
> Conner's guilty plea to the amended charges was not made knowingly, voluntarily, and intelligently, and, as a result, the court's acceptance of that plea was in violation of Conner's constitutional rights and Criminal Rule 11.

---

[1] In *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), this court, sitting en banc, upheld the constitutionality of the indefinite sentencing provisions of the Reagan Tokes Law. Conner notes in his appellate brief that "[i]f Reagan Tokes did apply, the trial court's stated sentences on the two 'qualifying felonies' * * * would presumably be treated as the minimum terms of imprisonment for those offenses under Reagan Tokes" and that "when the resulting Reagan Tokes maximum terms for those felonies are calculated, and the trial court's order of consecutive sentences is applied, the trial court's aggregate sentence would be 25-29 years" and "would thus greatly exceed the agreed 20-25 years range of the plea agreement and would violate that agreement." (Emphasis deleted.) Because the state did not file a cross-appeal challenging the trial court's failure to apply the Reagan Tokes Law when sentencing Conner, we will not further address the issue here.

Assignment of Error 2:
Conner's convictions for involuntary manslaughter and its sole predicate of (A)(1) felonious assault, in amended Counts 1 and 4, should have been merged, respectively, into a single conviction of involuntary manslaughter. The trial court's failure to do so, and its imposition of consecutive sentences for Counts 1 and 4, violated Ohio merger law, Conner's right to due process, and his protection from double jeopardy against cumulative punishments for the same offense.

## Law and Analysis

### Knowing, Intelligent and Voluntary Guilty Pleas

{¶ 14} In his first assignment of error, Conner challenges the validity of his guilty pleas, arguing that his guilty pleas were not entered knowingly, intelligently and voluntarily and should not have been accepted by the trial court because "[m]erger was not discussed with Conner or explained to him by the court at all" and the trial court "failed to ensure that Conner understood" that (1) the plea agreement would "bar any merger of amended Counts 1 and 4," (2) Conner would "be sentenced separately and consecutively on those counts" and (3) "well-settled law * * * requires such offenses to be merged because they are not, and were not, committed with separate animus." We disagree.

{¶ 15} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *see also State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996) ("When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and

voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.").

{¶ 16} Crim.R. 11(C)(2) "prescribes the process" a trial court must follow before accepting a guilty plea to a felony. *Bishop* at ¶ 11, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975). The purpose of Crim.R. 11(C)(2) is "'to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty.'" *State v. Woodall*, 8th Dist. Cuyahoga No. 102823, 2016-Ohio-294, ¶ 12, quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 17} Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea in a felony case without first personally addressing the defendant and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 18} We conduct a de novo review to determine whether the trial court accepted a guilty plea in compliance with Crim.R. 11(C). *State v. Meadows*, 8th Dist. Cuyahoga No. 111489, 2022-Ohio-4513, ¶ 18, citing *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26. The focus in reviewing pleas is not "on whether the trial judge has '[incanted] the precise verbiage' of the rule, * * * but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12, quoting *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977). When evaluating whether a trial court has complied with Crim.R. 11(C), we must ask

(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17. A defendant seeking to vacate a guilty plea must demonstrate that he or she was prejudiced by a failure of the trial court to comply with Crim.R. 11(C) unless (1) the trial court failed to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that the defendant waived by pleading guilty or (2) the trial court

"completely fail[ed]" to "comply with a portion of Crim.R. 11(C)." *Id*. at ¶ 13-17, 23. "Prejudice must be established "'on the face of the record.'"" *Id*. at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462, 709 N.E.2d 162 (1999). The "test for prejudice" is "'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 19} In this case, Conner does not dispute that the trial court complied with Crim.R. 11(C)(2) with respect to its advisements regarding constitutional rights. Rather, Conner contends that the trial court "did not comply with the requirements of Rule 11" because "[t]here was no discussion of the allied nature of the offenses in amended Counts 1 and 4 or the concept of merger" and Conner was "not asked about, and did not express any agreement, that the offenses were committed with the same animus or were not part of the same act or transaction." Conner maintains that the trial court should not have accepted his guilty pleas without ensuring that he understood "the merger of allied offenses and the consequences of his guilty pleas as it related to the merger doctrine." In support of his argument, Conner cites *State v. Taylor*, 4th Dist. Washington No. 07CA29, 2008-Ohio-484.

{¶ 20} In *Taylor*, the defendant, Taylor, claimed that the trial court had erred when it concluded, before Taylor entered his guilty pleas, that the kidnapping and gross sexual imposition offenses with which Taylor had been charged were not

allied offenses of similar import. *Id.* at ¶ 14-16. In that case, the trial court, not the parties, raised the issue of allied offenses at the change-of-plea hearing before Taylor entered his guilty pleas. *Id.* at ¶ 6-7, 23. The state told then told the trial court that it believed the offenses were not allied offenses, and the trial court agreed. *Id.* at ¶ 7, 23. On appeal, the Fourth District disagreed with the trial court and found that the kidnapping and gross sexual imposition offenses were allied offenses of similar import under R.C. 2941.25(A). *Id.* at ¶ 1, 20-21.

{¶ 21} Taylor did not object to the trial court's finding that the offenses were not allied offenses at the time he entered his guilty pleas, but did object at the sentencing before the trial court sentenced him. *Id.* at ¶ 9-10, 22-23. The court found that Taylor, therefore, did not waive the issue for appeal. *Id.* at ¶ 1, 23.

{¶ 22} In *Taylor* — unlike in this case — the plea agreement between the state and Taylor did not resolve the allied offense issue and did not include an agreed or recommended sentence. *Id.* at ¶ 6, 23, 29. Under those circumstances, the Fourth District held that a trial court

> cannot properly explain the nature of the offenses and the maximum penalties involved until it resolves the issue of allied offenses of similar import. Stated differently, until the allied offense issue is resolved, a defendant cannot subjectively understand the implications of his plea.

*Id.* at ¶ 29. The court found that the trial court "did not substantially comply with Crim.R. 11 when it accepted Taylor's guilty pleas without making a proper finding under R.C. 2941.25(A)" and that Taylor, therefore, did not knowingly, voluntarily and intelligently enter his guilty plea to gross sexual imposition. *Id.* at ¶ 1, 29. The

court held that the trial court's error "affected Taylor's substantial rights" because it "convicted and sentenced him for both the kidnapping and the gross sexual imposition offenses" and vacated the conviction and sentence for the gross sexual imposition offense. *Id.* at ¶ 29, 32. This case is different.

{¶ 23} First, this court has repeatedly held that there is "no requirement that a trial court advise a defendant regarding the possible merger of offenses for sentencing or ensure that a defendant understands the merger of offenses before accepting the defendant's guilty pleas." *See, e.g., State v. Knight,* 8th Dist. Cuyahoga No. 109302, 2021-Ohio-3674, ¶ 22; *State v. Albright*, 8th Dist. Cuyahoga No. 107632, 2019-Ohio-1998, ¶ 18; *see also State v. Simmons*, 8th Dist. Cuyahoga No. 107144, 2019-Ohio-459, ¶ 6 ("Crim.R. 11 does not embrace consideration of merger."); *State v. Reed*, 8th Dist. Cuyahoga No. 105862, 2018-Ohio-3040, ¶ 26 ("[T]here is no requirement in Crim.R. 11 that the trial court must ensure a defendant understands the merger of offenses for purposes of sentencing before accepting his plea."); *see also State v. Shannon*, 11th Dist. Trumbull No. 2017-T-0012, 2017-Ohio-9344, ¶ 28 ("Crim.R. 11(C) does not require the defendant to be advised of possible merger of the offenses at sentencing.").

{¶ 24} It is clear from the record that Conner knew, and understood, that as part of the plea agreement, there would be no merger of amended Counts 1 and 4 in 661269 and that Conner would receive an aggregate sentence in the range of 20 years and 25 years for the offenses to which he pled guilty in both cases. At the outset of the change-of-plea hearing, it was clearly stated on the record: "[P]art and parcel

of this plea agreement in this case, Counts 1 and — amended Count 1 and Count 4 will not merge for purposes of sentencing. * * * Part and parcel of this plea agreement * * * is an agreed sentencing range of 20 to 25 years, [at] the Court's discretion." Defense counsel confirmed that these were negotiated terms of the plea agreement.

{¶ 25} Prior to accepting Conner's guilty pleas, the trial court carefully reviewed with Conner each of offenses to which Conner would be pleading guilty, identifying the potential prison sentences he could receive on each count — i.e., in 661269, (1) 3 years for the firearm specification and 3, 4, 5, 6, 7, 8, 9, 10 or 11 years on the base offense on amended Count 1, (2) 2, 3, 4, 5, 6, 7 or 8 years on amended Count 4 and (3) 6, 9, 12, 18, 24, 30 or 36 months on Count 6, and in 661251, 9, 12, 18, 24, 30 or 36 months on Count 1 — and confirmed that Conner understood the sentences he could receive on each. The trial court also, once again, specifically advised Conner that "by pleading in these two cases, * * * you've agreed to a 20 to 25-year range which will be determined when you're sentenced at the time of sentencing." Conner confirmed that he understood this. The only way a sentence could be imposed within the agreed sentencing range — other than the minimum aggregate 20-year sentence — was if amended Counts 1 and 4 did not merge for sentencing.

{¶ 26} Even if the trial court had not fully complied with Crim.R. 11(C)(2)(a)-(b), Conner has made no showing of prejudice. There is nothing in the record that shows Conner would not have proceeded with the plea agreement and entered his

guilty pleas if the trial court had specifically discussed the concepts of allied offenses and the merger doctrine with Conner. With his guilty pleas, Conner avoided a possible conviction for aggravated murder (as well as additional convictions on numerous other charges). Based on the limited information in the record, it appears that there were both eyewitnesses and video evidence of Conner's role in the shooting death of Washington. Conner told the trial court that his attorneys had "explained everything" to him and answered all his questions before he entered his guilty pleas. Conner has not raised a claim of ineffective assistance of counsel.

{¶ 27} Following a thorough review of the record, we find that the trial court complied with Crim.R. 11(C)(2), that Conner's guilty pleas were entered knowingly, intelligently and voluntarily and that the trial court did not err in accepting Conner's guilty pleas. Conner's first assignment of error is overruled.

**Agreed Sentence and Allied Offenses**

{¶ 28} In his second assignment of error, Conner argues that the trial court erred in sentencing him on both the involuntary manslaughter and felonious assault offenses in 661269 because they are allied offenses of similar import. He contends that the trial court's failure to merge the offenses and to require the state to select the offense on which it wanted to proceed to sentence was "a violation of Ohio merger law, Conner's right to due process, and his protection from double jeopardy against cumulative punishments for the same offense." The state responds that R.C. 2953.08(D)(1) "precludes appellate review" of Conner's sentences.

{¶ 29} "A defendant's right to appeal a sentence is generally derived from R.C. 2953.08." *State v. Brabson*, 8th Dist. Cuyahoga No. 111542, 2023-Ohio-449, ¶ 6, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 10. R.C. 2953.08(D)(1) states, "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." *See also State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 22 (R.C. 2953.08(D)(1) is "a statutory limit on a court of appeals' jurisdiction to hear an appeal."). *But see State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, ¶ 1-2, 22 (constitutional challenge to sentence could be maintained despite prohibition against appellate review in R.C. 2953.08(D)(3)).[2] R.C. 2953.08(D)(1)'s limitation on a defendant's ability to challenge a jointly recommended sentence on appeal applies to sentences imposed pursuant to plea agreements involving an agreed specific term, plea agreements involving a jointly recommended sentencing range and plea agreements involving pleas to multiple offenses with a jointly recommended aggregate sentencing range. *See, e.g., State v. Williams*, 8th Dist. Cuyahoga No. 109091, 2020-Ohio-4467, ¶ 32; *State v. Grant*, 2018-Ohio-1759, 111 N.E.3d 791, ¶ 11-20, 23 (8th Dist.). In this case,

---

[2] In their appellate briefs, the parties do not address *Patrick*. They simply argue whether or not Conner has a right to appeal his sentences under R.C. 2953.08(D)(1). Accordingly, that is our focus here. However, even if Conner's challenge to his sentences were considered to be a constitutional challenge that could be maintained despite the limitation on appellate review set forth in R.C. 2953.08(D)(1), we would reach the same result, i.e., Conner waived the allied-offense issue by agreeing, as part of his plea agreement, that the offenses did not merge for sentencing.

the trial court imposed sentences pursuant to the parties' plea agreement that included an agreement regarding an aggregate sentencing range.

{¶ 30} Relying on the Ohio Supreme Court's decision in *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, Conner argues that his sentences were "not authorized by law" and that appellate review of his sentences is, therefore, "not barred by R.C. 2953.08(D)(1)" because the involuntary manslaughter and felonious assault counts to which he pled guilty were allied offenses of similar import and should have been merged for sentencing pursuant to R.C. 2941.25.

{¶ 31} In *Underwood*, the Ohio Supreme Court held that a defendant had the right to appeal a sentence, even though it was jointly recommended by the parties and imposed by the trial court, when the sentence was "imposed for multiple convictions on offenses that are allied offenses of similar import in violation of R.C. 2941.25(A)." *Underwood* at paragraph one of the syllabus. The court stated that a sentence is "authorized by law" under R.C. 2953.08(D)(1) "only if it comports with all mandatory sentencing provisions." *Id.* at paragraph two of the syllabus. One such mandatory sentencing provision is R.C. 2941.25(A). *Id.* at ¶ 26. R.C. 2941.25, Ohio's allied-offenses statute, "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibit[] multiple punishments for the same offense." *Id.* at ¶ 23. It states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment

or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 32} In *Underwood*, the state and defendant had entered into a plea agreement with an agreed sentence, but the agreement was silent as to whether the offenses that were the subject of the plea agreement would merge. *Underwood* at ¶ 4. The state conceded that the offenses at issue were allied offenses of similar import but the trial court, nevertheless, imposed concurrent sentences on both offenses. *Id*. at ¶ 4-6, 30. Observing that the allied-offense statute prohibits a trial court from "imposing individual sentences for counts that constitute allied offenses of similar import" and that this duty is "mandatory, not discretionary," the court found that a trial court's failure to merge allied offenses of similar import at sentencing could result in a sentence that is not "authorized by law." *Id*. at ¶ 26. In *Underwood*, unlike in this case, the trial court imposed separate sentences on counts that had been deemed to be allied offenses. *Id*. at ¶ 30. Under such circumstances, the court held that appellate review would not be barred by R.C. 2953.08(D)(1) even if the sentences had been jointly recommended and imposed by the trial court. *Id*. at ¶ 26.

{¶ 33} The court also recognized, however, that a defendant could waive the application of R.C. 2941.25(A). The court explained:

> [N]othing in this decision precludes the state and a defendant from stipulating in the plea agreement that the offenses were committed with separate animus, thus subjecting the defendant to more than one conviction and sentence.

*Id.* at ¶ 29; *see also State v. Torres*, 8th Dist. Cuyahoga No. 100106, 2014-Ohio-1622, ¶ 11 (where parties stipulated that offenses to which defendant was pleading guilty were not allied offenses, trial court was not obligated to determine whether the offenses were allied offenses).

{¶ 34} In such a case, the defendant waives the protection afforded by R.C. 2941.25, intentionally relinquishing the opportunity to argue that he or she committed the offenses with the same conduct and the same animus. *See, e.g., State v. Black*, 2016-Ohio-383, 58 N.E.3d 561, ¶ 16 (8th Dist.), citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20; *State v. Pagan*, 10th Dist. Franklin No. 19AP-216, 2019-Ohio-4954, ¶ 23-24 (defendant waived any merger argument by stipulating in his plea agreement that "counts do not merge").

{¶ 35} Conner contends that the trial court's sentences on the involuntary manslaughter and felonious assault counts were not "authorized by law" because there was "no acknowledgement by Conner himself during the plea hearing or at sentencing that the offenses were committed with separate animus" and "a knowing, voluntary, and intelligent waiver of the benefits of that merger law was not sought or obtained from Conner."

{¶ 36} However, an express acknowledgement or stipulation by the defendant that multiple offenses were "committed with separate animus" is not the

exclusive means by which a defendant may "waive the protection afforded by R.C. 2941.25." *Black* at ¶ 16-18 ("[S]pecifically 'stipulating in the plea agreement that the offenses were committed with separate animus,'" is "simply one means by which a defendant may 'waive the protection afforded by R.C. 2941.25.'"), quoting *Rogers* at ¶ 20. "Waiving rights under R.C. 2941.25 arises in a variety of ways and is not limited to an agreement expressly referencing R.C. 2941.25." *State v. Lee*, 2018-Ohio-1839, 112 N.E.3d 65 (8th Dist.), ¶ 7.

{¶ 37} It is well established that where the transcript demonstrates that the state and defense counsel agreed that offenses were not allied, the issue of allied offenses is waived. *See, e.g., State v. T.B.*, 8th Dist. Cuyahoga No. 109949, 2021-Ohio-2104, ¶ 25; *Black* at ¶ 18 (citing cases). In this case, the transcript from the change-of-plea hearing clearly shows that defense counsel agreed that the involuntary manslaughter and felonious assault counts in 661269 would not merge. The record further reflects that Conner agreed that he would receive an aggregate prison sentence of between 20 and 25 years on the offenses in 661269 and 661251. Because Conner agreed that the offenses at issue would not merge for sentencing — i.e., "negotiat[ing]" the merger issue "out of the sentencing equation" as part of his plea agreement — he has waived the allied-offense issue. *Lee* at ¶ 11; *T.B.* at ¶ 26 (where parties agreed that none of the offenses to which defendant pled guilty were allied offenses of similar import, defendant waived the allied-offense issue).

{¶ 38} Conner's second assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR